WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Texaz Star Turbines Incorporated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Ted McIntyre, et al.,<br><br>　　　　　　Defendants. | No. CV-20-08071-PCT-SMB<br><br>**ORDER** |

Pending before the Court is Turbine Powered Technology, LLC and Ted McIntyre's Motion to Dismiss First Amended Complaint (Doc. 13) to which a response (Doc. 16) and a reply (Doc. 17) have been filed. The Court has reviewed the pleadings and relevant case law and now issues this ruling.

**I.　　BACKGROUND**

Plaintiff Texaz Star Turbines, Inc. ("Plaintiff") is an Arizona corporation suing the Defendants, Ted McIntyre and Turbine Powered Technology, LLC ("TPT"), for breach of a contract. (Doc. 1-2 at 43.) Plaintiff was incorporated in Arizona on September 9, 2015.[1]

---

[1] The Defendants have attached certain documents from the Texas Secretary of State and the Arizona Corporation Commission to their motion. The Court takes judicial notice of these documents. Normally when a complaint is challenged under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). However, courts may "consider…matters of judicial notice…." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may take judicial notice of matters of public record." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

(Doc. 13-1 at 12-14.) The CEO, sole shareholder, and sole director of Plaintiff is one Robert L. Robertson. (*Id*. at 13.) Robert L. Robertson is also listed as the last president, director, and registered agent of the currently defunct Texas corporation Texas Star Turbines, Inc. ("Texas Inc.") (*Id*. at 8.) Texas Inc. was incorporated in 1994 and remained in existence until it was terminated via tax forfeiture in 1998, seventeen years before Plaintiff was incorporated. (*Id*. at 2.)

Plaintiff filed its original complaint on October 14, 2019 in Arizona's Navajo County Superior Court and filed its First Amended Complaint (FAC) in that same Court on March 3, 2020. (Docs 1-1 at 11, 1-2 at 42). Plaintiff's FAC alleges that "on or about July 31, 2013, the parties entered into a written purchase agreement for the sale of… [a Conex Container, Lot of T53 engine parts, Lot of T53 engine tooling, 7ea engine rollover stands, Lot of T53 engine parts carts, 8ea T53-L-13 engines…" (Doc. 1-2 at 43-44.) While this allegation seems to state that "the parties" to this litigation entered the purchase agreement, other allegations of the FAC state that Plaintiff was only assigned a beneficial interest in the agreement "subsequent to [its] execution." (*Id*. at 43.) The FAC never alludes to who assigned Plaintiff a beneficial interest. (*Id*. at 42-46.)

An agreement is attached to the FAC and appears to be between the Texas Inc. and TPT, a Louisiana company. (*Id*. at 52-53.) The agreement, a bill of sale, was signed in July 2013 and contains a list of inventories allegedly sold to TPT. (*Id*.) The FAC alleges that pursuant to "the purchase agreement" the Defendants were required to pay $800,000.00 for the equipment, with an initial payment of $150,000.00 and additional monthly payments of $50,000.00 with the last payment due on October 1, 2014. (*Id*. at 44.) Plaintiff alleges that Defendants have failed to pay the final $450,000.00 owing on the agreement, and as such, Plaintiff brings this suit for breach of contract. (*Id*.)

Along with TPT, Plaintiff has sued Ted McIntyre ("Mr. McIntyre") for its breach of contract claim. (*Id*. at 42-45.) Plaintiff does not explain who Mr. McIntyre is in its FAC, but TPT's motion states that Mr. McIntyre is the Chief Executive Officer of TPT. The FAC alleges that "[Mr.] McIntyre is currently in possession of some or all of the equipment

1 transferred to TPT as part of the agreement." (*Id*. at 43.)

2 Defendants have filed a motion (Doc. 13) seeking to dismiss the FAC for the following reasons: (1) failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); (3) the action is time barred pursuant to A.R.S. § 12-543; and (4) Mr. McIntyre may not be sued in his individual capacity.

## II.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court has subject-matter jurisdiction over claims that "aris[e] under the Constitution, laws, or treaties of the United States" and over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties. 28 U.S.C. §§ 1331, 1332. Because our jurisdiction is limited, it is to be presumed that a cause lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Kokkonen*, 511 U.S. at 377.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a facial attack, the court "accept[s] the plaintiff's allegations as true" and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction," "drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* In a facial attack, our inquiry is confined to the allegations in the complaint, while a factual attack permits the court to look beyond the complaint. *Savage v. Glendale Union*

*High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2004).

The party asserting jurisdiction bears the burden of proof. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). When the plaintiff does not meet the burden of showing the court has subject-matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

### B.     Failure to State a Claim

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v.*

*Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III.  DISCUSSION

#### A.  Breach of Contract

Defendants first argue that Plaintiff has failed to state a claim for breach of contract because no valid contract exists. Defendants allege no valid contract exists between the parties because at the time of the alleged agreement was entered, Texas Inc. was not a legal entity and so lacked capacity to contract.

Under Texas law, a corporation that fails to pay its taxes can have its charter forfeited under the Texas tax code. *Cohen Acquistion Corp. v. EEPB, P.C.*, No. 14-14-00330-CV, 2015 Tex. App. LEXIS 5058 (Tex. App. May 19, 2015); *see also* Tex. Tax Code Ann. §§ 171.302, 171.309. After such forfeiture occurs, the corporation is deemed a "terminated filing entity." *Cohen Acquisition Corp*. 2015 Tex. App. LEXIS 5058, at *4 Once the forfeiture occurs and the corporation becomes a terminated filing entity, it ceases to exist for most purposes. *Id*.; *see also Kirby v. Coastal Sales Ass'n, Inc*., 82 F. Supp. 2d 193, 197 (S.D.N.Y. 2000) (noting that dissolved corporations generally lack capacity to contract). A terminated filing entity continues in existence until the third anniversary of the effective date of termination, but only for very limited purposes. Tex. Bus. Orgs. Code § 11.356 ("the terminated filing entity continues…only for purposes of prosecuting or defending…an action…permitting the survival of an existing claim…holding title to and liquidating property…applying or distributing property…and settling affairs").

Defendants attached documents showing that Texas Inc. was incorporated on or around January 10, 1994 in Texas and Robert Robertson was its president. (Doc. 13-1 at 2-4.) Texas Inc. legal status was forfeited in 1998 for failure to pay taxes. (*Id.*) Texas Inc. was never reinstated as a legal entity.[2] The FAC alleges, and the attached bill of sale evidences, that Texas Inc. entered into the contract with TPT in July of 2013 despite having no legal existence. Additionally, Plaintiff was not incorporated until September 2015. Under Texas law, after forfeiture of its charter in 1998, Texas Inc. would have continued to exist *only for the limited purpose* of taking actions necessary to winddown its operations. Tex. Bus. Orgs. Code § 11.356. Even this limited existence would have only lasted an additional three years, with total termination of Texas Inc. occurring in 2001. *Id*. Thus, it appears that the contract, entered 15 years after Texas Inc. was terminated, is not valid.

Since the original contract entered by Texas Inc. was not valid, then Plaintiff cannot assert a cause of action for its breach. Even if Plaintiff was assigned the rights to the contract, an assignee of a cause of action "stands in the shoes of the assignor and may assert those rights that the assignor could assert." *Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 Fed. Appx. 731, 741 (5th Cir. 2017) (quoting *First-Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.)); *see also, M&T Bank v. SFR Invs. Pool 1*, LLC, 963 F.3d 854, 858 (9th Cir. 2020). If Texas Inc. had no capacity to contract, then it could not sue for that contract's breach. As assignee, the Plaintiff's rights are similarly limited. Plaintiff provides no authority to the contrary. Defendants' motion will be granted.

### B. Mr. McIntyre's Liability as an Officer

Defendants also move to dismiss Mr. McIntyre as a defendant because if any contract alleged exists, it is between Plaintiff and TPT. Defendants assert that Mr. McIntyre is the Chief Executive Officer of TPT and would have only entered into any agreement as an agent of TPT, not in his personal capacity. Defendants claim, and Plaintiff does not

---

[2] Plaintiff does not dispute the evidence from the Texas Secretary of State attached to Defendants' Motion.

contest, that Mr. McIntyre's personal liability as an officer for contracts entered on behalf of TPT is governed by Arizona law. (Doc. 13 at 6.) Under Arizona law, "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Cahn v. Fisher*, 167 Ariz. 219, 221 (App. 1990); *see also Five Points Hotel P'ship v. Pinsonneault*, 835 F.Supp.2d 753, 759 (D. Ariz. 2011) (noting a corporation is separate legal entity).

Plaintiff has pled no facts sufficient to state a claim for breach of contract against Mr. McIntyre. As basis for his suit, Plaintiff merely alleges that Mr. McIntyre is in possession of some of the equipment transferred pursuant to its agreement with TPT. However, that fact even taken as true provides no basis for suing Mr. McIntyre for breach of a contract to which he is not a party. While Plaintiff asserts that it intends to proceed on a theory that TPT is an "alter ego" of Mr. McIntyre, it has not alleged adequate facts to state a claim to that effect. Plaintiff merely alleges that Mr. McIntyre has physical possession of some of the items and is therefore liable.[3] While there may be some equitable claim against him if that is in fact true, it cannot be based on a contract for which was not a party.

### C. Oral Contract

Defendants make two additional arguments based on the assumption that Plaintiff will argue the existence of an oral contract. Defendants argue that Texaz Inc. lacks standing because any oral contract would be between Robert Robertson and TPT. Defendants further argue that if Plaintiff is seeking to allege an oral contract the claim is time-barred because Arizona's statute of limitations for suit on an oral contract is 3 years.

The Court need not and will not address either of these arguments. The FAC alleges a written contract, attaches the written contract, and has not alleged any alternate theory. Plaintiff does not respond to these arguments other than to say that it cannot properly respond. Plaintiff made no attempt to adopt a theory of an oral contract and so the Court

---

[3] Mr. McIntyre denies having any equipment in his possession but for ruling on the MTD, the Court takes the facts in the FAC as true.

- 7 -

will not engage in a hypothetical argument.

### D. Leave to Amend

Even where a Plaintiff's complaint fails to state a claim, Rule 15 of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("It is properly denied, however, if amendment would be futile.").

In the present case the Court believes there are alternative theories of relief or additional allegations that could cure the deficiencies in the pleading. So, the Court will grant Plaintiff leave to amend its complaint. Within sixty (60) days from the date of entry of this Order, Plaintiff may submit an Amended Complaint. Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint." The Amended Complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss First Amended Complaint (Doc. 13) **is granted** and Plaintiff's First Amended Complaint is **dismissed with leave to amend** within sixty (60) days of the date of this order.

Dated this 8th day of February, 2021.

Honorable Susan M. Brnovich
United States District Judge